**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRANDON JORDAN, a minor,     )
MARIA M. ARENAS-JORDAN,     )
and JOSE ARENAS,     )
     )
       Plaintiffs,     )    Case No.  1:09-cv-88-SJM-SPB
     )
   v.     )
     )
CORPORAL TODD McLAUGHLIN,     )
OFFICER ANTHONY TALARICO, and     )
OFFICER RICHARD ROMANSKI,     )
     )
       Defendants.     )

**<u>MEMORANDUM OPINION</u>**

McLAUGHLIN, SEAN J., District J.

      This matter arises out of an incident which occurred in the early morning hours of September 26, 2007 when Erie police officers, responding to a report of an armed home invasion, became involved in a high-speed car chase which inadvertently led them to Plaintiffs' home.  Mistakenly believing that the vehicle in the driveway was the one they had been pursuing, the police officers placed Plaintiff Maria M. Arenas-Jordan under arrest and entered the Plaintiffs' home, where they encountered Plaintiffs Jose Arenas and Brandon Jordan.  Plaintiffs subsequently filed this lawsuit against police officers Anthony Talarico and Richard Romanski, among others, asserting various claims under 42 U.S.C. §1983 premised on the alleged violation of their Fourth Amendment rights.

      Following a four-day trial, the jury awarded a verdict of $1.00 in favor of Maria Arenas-Jordan based on her warrantless arrest.  The jury also awarded $1.00 to each of the three Plaintiffs based on the officers' warrantless entry into their home.

Presently pending before the Court is a motion under Rule 50(b) filed by Defendants Talarico and Romanski for judgment as a matter of law based on qualified immunity.  This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  For the reasons that follow, Defendants' Rule 50(b) motion will be granted with respect to Officer Romanski and denied with respect to Sergeant Talarico.

## I.      FACTUAL BACKGROUND

At approximately 1:44 a.m. on the morning of September 26, 2007, the Millcreek Township Police Department received a dispatch concerning a home invasion and shots fired at a west-side Millcreek residence.  The assailants were described as being two black males wearing hats with the word "police" on them and t-shirts with the same lettering.  The vehicle in which they fled was described as a white minivan heading east toward the City of Erie.  Initially, no vehicle plate information was known.

Sergeant Anthony Talarico of the Erie Bureau of Police received the foregoing information and took up pursuit of the vehicle.  The white minivan proceeded through the City of Erie at a high rate of speed, disregarding stop signs and stop lights.  Because of the high speed at which the vehicle was traveling, Talarico could not get close enough to read the vehicle plate.  Another unit occupied by Erie police officers William Goozdich and Richard Romanski heard the dispatch and joined the pursuit.  Their unit was nearly struck head-on by the minivan as it continued eastward through the City of Erie.

At approximately 1:55 a.m., Sergeant Talarico lost sight of the vehicle near an alleyway between Ash and Wallace Streets.  Prior to losing sight of the vehicle, Talarico

was able to determine that the license place started with the letter "G."  This information was given out over the air to other police units that had joined in the pursuit.

Soon after Talarico had lost sight of the van, Erie police officers Jamie Russo and Gabriel Amory located a white Dodge Caravan with a grey bumper, tinted windows, and a license plate beginning with a "G" in the driveway of 655 East 5th Street. Unbeknownst to the officers, this address was the residence of Plaintiffs Maria Arenas-Jordan ("Maria), her 10 year-old step-son Brandon Jordan ("Brandon"), and her father Jose Arenas ("Jose"), none of whom had had any involvement in the Millcreek home invasion or ensuing chase.

At the time Officers Russo and Amory spotted the white Dodge Caravan, it was stationary with the engine running and brake lights on and it was deep in the driveway toward the back yard of the residence.  Its sole occupant was Maria, a 22-year old white, Hispanic female who was preparing to leave her house so that she could pick her husband up from work.

Before Maria could leave her driveway, Russo and Amory backed up to block the driveway and approached the minivan on foot.  With guns drawn, they ordered her out of the vehicle and onto the driveway in a prone position.  During this time, other Erie police officers arrived on scene, including Corporal Todd McLaughlin,[1] who handcuffed Maria and placed her in his cruiser up the street.  Sergeant Talarico arrived on scene after Maria had been arrested and, upon observing her apprehended, made reference to her as the "retard" who had been driving the van.

---

[1] Corporal McLaughlin has no familial relation to the undersigned.

Meanwhile, Officer Romanski had proceeded to the rear of the house and announced over his radio that there was an open door.  The rear entrance consisted of a sliding glass door with no locking mechanism which was partially open.  The outer screen door to this entrance had been removed from its track and was resting nearby.  Officer Romanski entered the residence along with numerous other officers.  Outside the house, various other officers took up various positions in the front and back yards.

Once inside the house, Romanski helped clear the second floor as other officers cleared the rest of the house.  While on the second floor, Officer Romanski entered Brandon's bedroom.  What occurred at this point was disputed at trial.  While Brandon testified that Romanski pointed his hand gun at Brandon's head at close range, Romanski testified that he entered the room with his weapon in low ready position and merely asked to see Brandon's hands and inquired whether he was alright and whether anyone else was in the room.  During the officers' sweep of the second floor, they also encountered Jose Arenas ("Jose").

After clearing the house, Officers James Bielak and Steven DeLuca exited the residence.  At 2:13 a.m., they located a white Plymouth Voyager minivan with a license plate beginning with the letter "G" in an alley near the Plaintiffs' residence – the same area where Talarico had reported losing sight of the vehicle.  Inside the van was a police scanner radio, black gloves, and a hat with the word "police" on it.  The van was eventually taken into custody by Millcreek police officers and processed.

In the meantime, various Erie police officers on scene at 655 East 5th Street were independently concluding that the Plaintiffs' Dodge Caravan was not the vehicle involved in the Millcreek incident.  Officer Peter Dregalla arrived on scene and stayed

only briefly.  After feeling the hood of the van and finding it to be cold, he left to continue

the search.  Officer Melanie Szoszorek similarly left the scene after learning that the

van's hood was cold.

Corporal McLaughlin also became aware that the hood of the van was cold.

Based on the van's temperature and Maria's explanation that she was on her way to

pick up her husband from work, McLaughlin began to conclude that Maria was not a

suspect, and he attempted to convey this information to Talarico.

Talarico acknowledged at trial that he too began to have doubts about whether

Maria's minivan was the one he had been pursuing.  Nevertheless, Maria remained in

custody at his direction pending the arrival of Millcreek police units, which were en route

to the scene.

Exactly how long Maria remained detained in McLaughlin's cruiser is a matter of

some uncertainty.  Defendants claim that the entire incident lasted approximately

seventeen minutes, based on police dispatch reports.  However, there does not appear

to be any documentation as to the precise time of Maria's release.

## II.    PROCEDURAL HISTORY

As a result of the foregoing events, Plaintiffs commenced this action on April 15,

2009, naming Talarico, McLaughlin, Romanski, and eleven other Erie police officers as

Defendants.  Although the complaint includes four counts, it effectively asserted six

different claims premised upon violations of the Plaintiffs' Fourth Amendment rights –

namely, excessive force claims on behalf of each Plaintiff arising out of their respective

confrontations with the armed officers, a claim by Maria for arrest without probable

cause, a claim premised on the allegedly unreasonable search of the Plaintiffs' home, and a claim premised on the allegedly unreasonable search of Maria's purse.

On September 28, 2011, this Court entered a Memorandum Opinion and Order [35] partially granting the Defendants' motion for summary judgment.  In particular, we granted summary judgment in favor of the Defendants with respect to Maria's claim of excessive force in connection with her arrest and Jose's claim of excessive force in connection with the search of the house.  In addition, we entered judgment in favor of several officers who were not involved in the allegedly unconstitutional conduct.  As to all of the Plaintiffs' other claims, we denied summary judgment.

The case proceeded to trial in May of 2012.  In the course of those proceedings, all of the Defendant police officers other than McLaughlin, Talarico and Romanski were dismissed from the case or granted a directed verdict.  In addition, the Court granted a directed verdict for the Defendants as to Maria's claim premised on the search of her purse.

As a result, only three remaining claims went to a verdict.  As to Maria's claim for arrest without probable cause against Corporal McLaughlin, the jury entered a liability verdict in favor of McLaughlin.  As to Maria's claim against Talarico premised on arrest without probable cause, the jury returned a verdict of liability against Talarico and awarded Maria nominal damages of $1.00.  As to the Plaintiffs' claim of unreasonable search premised on the search of their house, the jury entered a verdict in favor of Plaintiffs and awarded them each $1.00 in nominal damages.  The jury also answered a special interrogatory in which they found, as a matter of historical fact, that the sliding glass door at the rear entrance to Plaintiffs' home was partially open at the time

Romanski encountered it.  Defendants subsequently made an oral motion for qualified

immunity which was denied.

Following the entry of judgment, Defendants Talarico and Romanski filed a

renewed motion under Rule 50(b) for judgment as a matter of law based on qualified

immunity.  Plaintiffs have filed their response, and the matter is now ripe for

consideration.

### III.   STANDARD OF REVIEW

Rule 50(a)(1) of the Federal Rules of Civil Procedure authorizes the entry of

judgment as a matter of law according to the following standard:

> (1) In General.  If a party has been fully heard on an issue during a jury trial and
> the court finds that a reasonable jury would not have a legally sufficient
> evidentiary basis to find for the party on that issue, the court may:
>
> > (A) resolve the issue against the party; and
> >
> > (B) grant a motion for judgment as a matter of law against the party on a claim
> > or defense that, under the controlling law, can be maintained or defeated only
> > with a favorable finding on that issue.

Fed.R.Civ.P. 50(a)(1).  A motion for relief under Rule 50(a) may be made at any

time before the case is submitted to the jury.  Fed.R.Civ.P. 50(a)(2).

Where, as here, the court does not grant the Rule 50(a) motion, "the court is

considered to have submitted the action to the jury subject to the court's later deciding

the legal questions raised by the motion."  Fed.R.Civ.P. 50(b).  In the event an adverse

judgment is entered, the movant may, within 28 days thereafter, renew the motion for

judgment as a matter of law.  *Id.*  In ruling upon a renewed motion, the court may:  (1)

allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3)

direct the entry of judgment as a matter of law.  *Id.*

In deciding a defendant's Rule 50(b) motion, the court must view the evidence in the light most favorable to the prevailing, non-moving party, giving that party the benefit of every fair and reasonable inference. *Toledo Mack Sales & Service, Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 209 (3d Cir.2008). *See also, Davis v. Berks County Philadelphia*, 351 Fed.Appx. 640, 643 (3d Cir.2009) ("A district court should grant a motion for judgment as a matter of law only if, 'viewing the evidence in the light most favorable to the nonmovant and giving [him] the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability.'") (*citing Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1166 (3d Cir.1993)) (alteration in the original). We turn, then, to our substantive analysis of Defendants' Rule 50(b) motion in light of the foregoing standard of review.

## IV.   DISCUSSION

Plaintiffs' claims in this matter are brought under 42 U.S.C. § 1983, which affords a private right as against:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…

This statute does not create substantive rights but instead "provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

To prevail under 42 U.S.C. § 1983, a plaintiff must prove that s/he suffered the deprivation of a constitutional or federal rights by a person acting under color of state

law.  *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir.1995).  Since there is no

dispute that the Defendants acted under color of state, the focus at trial was on whether

the Plaintiffs had established a violation of their federal constitutional rights –

specifically, their Fourth Amendment rights to be free from unreasonable search and

seizure.

Here, the jury found that constitutional violations occurred in connection with both

Maria's detention by Talarico and Romanski's entry into Plaintiffs' home.  Since the jury

found these officers liable under differing legal theories, the Defendants' Rule 50(b)

motion must be considered in relation to Plaintiffs' respective claims against Sergeant

Talarico and Officer Romanski.

A.  <u>Maria's Claim Against Officer Talarico</u>

There is no dispute on this record that Maria was "seized" for Fourth Amendment

purposes in that she was subjected to an arrest by McLaughlin and her detention

continued at the direction of Talarico.  In order to comport with the Fourth Amendment,

however, her warrantless arrest had to be supported by probable cause to believe that

she had been engaged in criminal activity.  *See Reedy v. Evanson,* 615 F.3d 197, 211

(3d Cir. 2010) ("It is well-established that the Fourth Amendment 'prohibits a police

officer from arresting a citizen except upon probable cause.'") (citation omitted).

Probable cause exists "when the facts and circumstances within the arresting

officer's knowledge are sufficient in themselves to warrant a reasonable person to

believe that an offence has been or is being committed by the person being arrested."

*Orsatti v. N.J. State Police*, 71 F.3d 480, 482-83 (3d Cir.1995).  While this requires more

than a mere suspicion, it does not require a level of evidence as would support a conviction. *Adams v. Williams*, 407 U.S. 143, 149, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). Thus, this standard does not depend on the actual guilt or innocence of the arrestee; rather, it depends solely on whether the arresting officer had reasonable grounds to believe that the arrestee had committed the crime. *See Radich v. Goode*, 886 F.2d 1391, 1397 (3d Cir.1989). The test is an objective one based on the facts available to the officers "at the moment of arrest," *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994), rather than in hindsight. *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d Cir.2005). Furthermore, whether the arresting officer acts in good faith or in bad faith in effectuating the arrest is irrelevant. *Whren v. United States*, 517 U.S. 806, 813–14 (1998).

The Court's final jury charge incorporated these principles and further instructed that: (1) the jury would have to decide whether the defense had proved probable cause for Maria's arrest; (2) even if probable cause did exist to justify Maria's initial arrest, the jury would have to consider whether, at any point prior to her release, probable cause ceased to exist such that Maria continued to be held under arrest in the absence of probable cause; and (3) if the jury found probable cause to be lacking under either of these scenarios, Maria would be entitled to a verdict.

Ultimately, the jury found that Corporal McLaughlin did not violate Maria's Fourth Amendment rights in placing her under arrest and detaining her in the back of the police cruiser. On the other hand, the jury found that Sergeant Talarico did violate Maria's Fourth Amendment rights, presumably on the basis that he continued to detain her in

the police cruiser even after probable cause had dissipated.  Talarico contends that he is nevertheless entitled to judgment as a matter of law on grounds of qualified immunity.

Government officials performing discretionary functions are shielded from liability for damages under 42 U.S.C. § 1983 "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sharrar v. Felsing*, 128 F.3d 810, 826 (3d Cir.1997); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  It is the defendants' burden to establish that they are entitled to qualified immunity.  *Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir.2001).

Determining whether a police officer is protected by qualified immunity involves a two-step analysis.  First, the court must determine whether the facts, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *In re City of Phila. Litigation*, 49 F.3d 945, 961 (3d Cir.1995).  If no constitutional right was violated, the officer is entitled to immunity.  *Saucier*, 533 U.S. at 201; *see also Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir.2001).  However, if there has been a constitutional violation, "the next, sequential step is to ask whether the right was clearly established," i.e., "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 201; *see also Kornegay v. Cottingham*, 120 F.3d 392, 395-96 (3d Cir.1997).

The defense of qualified immunity remains available to a public official at time of trial; "'[o]nce the trial has been had,' however, 'the availability of official immunity should be determined by the trial record.'"  *Ortiz v. Jordan*, --- U.S. ---, ---, 131 S. Ct. 884, 889

(2011) (quoting 15 A C. Wright, A. Miller, & E. Cooper, Federal Practice & Procedure § 3914 -10, p. 684 (2d ed. 1992 and Supp. 2010)).  "After trial, if defendants continue to urge qualified immunity, the decisive question, ordinarily, is whether the evidence favoring the party seeking relief is legally sufficient to overcome the defense.  Id. (citation omitted).

We conclude that the trial record, viewed in the light most favorable to Plaintiffs, is sufficient to withstand Talarico's plea of qualified immunity.  At trial, the Plaintiffs' theory was that Maria, after having been arrested and placed in the cruiser by McLaughlin, was subsequently detained at the direction of Talarico even after it became clear that she was not involved in the home invasion incident.  Although the jury found probable cause to sustain Maria's initial arrest, there was also evidence from which the jury could find that Maria was detained at Talarico's direction for some period of time, even after there was no longer any probable cause to believe that Maria's van was the one involved in the Millcreek incident.

The Defendant does not appear to dispute this point as an evidentiary matter. Implicitly, the defense concedes there was evidence to establish a constitutional violation inasmuch as it does not challenge the sufficiency of evidence supporting the jury's finding that Talarico continued Maria's detention in the absence of probable cause.  Thus, the trial record supports the jury's finding that a constitutional violation occurred.

Nevertheless, Talarico argues for qualified immunity on the basis that it would not have been clear to a reasonable officer in his situation that his challenged conduct was unconstitutional.  Talarico implicitly concedes, as he must, that the general right not to

be subjected to a warrantless arrest in the absence of probable cause was clearly established in 2007.  He contends, though, that the unconstitutionality of his conduct was not clearly established in the context of the circumstances he faced.  *See Larsen v. Senate of Commonwealth of Pa.,* 154 F.3d 82, 87 (3d Cir. 1998) (for reasonable officials to be on notice that their conduct would be unlawful, there need not be "a previous precedent directly on point"; rather, there need only be "some but not precise factual correspondence between relevant precedents and the conduct at issue," such that "in the light of pre-existing law the unlawfulness (would be) apparent")(internal citations omitted) (alteration in the original).

We find the Defendant's argument in this regard unavailing.  Citing to *Estate of Smith v. Marasco,* 430 F.3d 140, 150 (3d Cir. 2005) and *United States Sharpe,* 470 U.S. 675 (1985), the defense contends that this Court's qualified immunity analysis must consider the severity of the underlying crime and the duration of Talarico's conduct. Neither case persuasively supports his point, however.  The qualified immunity analysis at issue in *Smith v. Marasco* involved an examination of factors relevant to a claim of excessive force – a legal theory involving different principles than those at issue here. *U.S. v. Sharpe* considered factors relevant for determining the reasonableness of a so-called "Terry stop"; however, a different test applies when the seizure rises to the level of an actual arrest:  i.e., reasonableness depends on the existence of probable cause.

The defense has also offered the explanation that, because the home invasion incident originated in Millcreek, the primary investigators of the case were the Millcreek police, whom Talarico understood were en route to the scene.  Thus, Talarico claims that, even after developing doubts about Maria's involvement in the Millcreek incident,

he made the decision to keep Maria in custody pending the arrival of Millcreek units just in case Millcreek officers possessed information that the Erie officers lacked.  This reasoning, however pragmatic it may seem, does not constitute an exception to the Fourth Amendment's probable cause requirement and, therefore, cannot provide a basis for qualified immunity.

We also note testimony from Talarico at time of trial that Maria was placed in McLaughlin's cruiser for the sake of her own protection, given the officers' belief that armed felons may have been on the premises.  To the extent this explanation served as a basis for Talarico's prolonged arrest of Maria, it does not support his plea of qualified immunity, as arresting an individual out of concern for their safety is not a recognized exception to the Fourth Amendment's probable cause requirement.

Finally, the Defendant emphasizes the very brief duration of Maria's detention. Talarico acknowledges that the actual time between the moment he developed doubts about Maria's van and the point at which she was released is not in the record and cannot be known with precision.  However, he points out that only seventeen minutes elapsed from the moment Maria's van was first spotted by Officers Amory and Russo (approximately 1:56 a.m.) and the discovery of the van actually involved in the Millcreek incident (approximately 2:13 a.m.).  Talarico maintains that, because the Millcreek units arrived within a short time after the perpetrators' van was discovered, Maria's wrongful detention could have lasted no more than several minutes.  Moreover, Talarico points out, the detention occurred in the immediate vicinity of Maria's house and she was therefore in a position to be released promptly once it was determined that there was no justification to continue her arrest.

While these particular considerations may serve to underscore the technical nature of the constitutional violation, the brief duration of Maria's illegal detention would not have made the unconstitutionality of her continued arrest at Talarico's direction any less clear to the hypothetical reasonable officer for qualified immunity purposes. Because we perceive the trial evidence to be sufficient to overcome Talarico's plea of qualified immunity, the jury's verdict in favor of Maria will stand and Sergeant Talarico's Rule 50(b) motion will be denied.

B. <u>Plaintiffs' Claim Against Officer Romanski</u>

The Fourth Amendment prohibits unreasonable searches and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.   A search is *per se* unreasonable, subject to a few limited exceptions, unless it is effectuated with a warrant based on probable cause. *Katz v. United States*, 389 U.S. 347, 357 (1967).  Because the search of Plaintiffs' home was performed without the benefit of a search warrant, the jury was asked to consider whether Romanski's conduct was lawful under either the "protective sweep" doctrine or the "exigent circumstances" doctrine -- two exceptions to the warrant requirement.

Under the first exception, the Fourth Amendment permits a limited protective sweep incident to an in-home arrest when the officers searching the premises possess a reasonable belief, based on specific and articulable facts together with rational inferences from those facts, "that the area to be swept harbors an individual posing a danger to those on the arrest scene."  *Maryland v. Buie*, 494 U.S. 325, 337 (1990).  This

holding has been extended in this circuit to include protective sweeps undertaken when a suspect is arrested just outside of the home. *Sharrar v. Felsing,* 128 F.3d 810, 824 (3d Cir. 1997). The validity of the protective sweep does not depend on the lawfulness of the arrest or the dangerousness of the arrestee. *Sharrar,* 128 F.3d at 823.

Under the second exception, police officers may conduct a warrantless search of a home where there is probable cause to support the search and some exigency exists which excuses the need for a warrant. Exigent circumstances may exist, e.g., where there is a need to fight a fire and investigate its cause, to prevent the imminent destruction of evidence, to engage in "hot pursuit" of a fleeing suspect, to render emergency assistance to an injured occupant, or to protect an occupant from imminent injury. *See Brigham City, Utah v. Stuart,* 547 U.S. 398, 403 (2006) (citing cases). The determination of whether there were exigent circumstances is made "by reviewing the facts and reasonably discoverable information available to the officers at the time they took their actions" and by considering "the totality of the circumstances facing them." *Estate of Smith v. Marasco,* 318 F.3d 497, 518 (3d Cir. 2003).

In asserting these exceptions to the warrant requirement, Romanski maintains that his entry into the Plaintiffs' residence was justified based on a reasonable (albeit mistaken) belief that the two individuals involved in the Millcreek incident had entered the house with weapons after fleeing their vehicle. Romanski posits that such a situation would pose an immediate threat to the safety of the police officers on scene as well as the residents inside the home.

At the summary judgment stage, this Court concluded that there were disputed issues of material fact concerning the Defendants' protective sweep and exigent

circumstances theories.  More specifically, we found that there were disputed facts

which, depending on their resolution, potentially made it unreasonable for the officers on

scene to believe that armed suspects had entered the house.  We acknowledged the

uncontroverted fact that the outer screen door to the rear entrance was found to be off

of its track and removed from its door frame.  However, there was a dispute as to the

state of the interior sliding glass door:  various officers had stated that this door was

found to be open to varying degrees and, in fact, Officer Romanski had reported an

open door over his radio upon reaching the area; on the other hand, Maria had

maintained that she closed the sliding glass door as she exited the house and secured it

by means of a wooden board which required an individual to use considerable force in

order to open it from the outside.  We concluded that, if a jury were to credit the

Plaintiffs' evidence, it could find that the officers who entered the back yard observed

only a screen door off its track and an interior door that was closed and sufficiently

secured so as to prevent ready access to intruders.  Such a finding, we reasoned, could

support an inference that the officers lacked a reasonable basis to believe that armed

and dangerous individuals had entered the house.

At trial, this same dispute was presented to the jury and, by way of a special

interrogatory, the jury determined that the interior sliding glass door was partially open.

Thus, the trial record establishes the following:

- Romanski participated in a portion of the high speed chase through the City of Erie in which he was nearly struck head on by the suspect van;

- this chase ultimately culminated in the discovery of Plaintiffs' van in the driveway of their residence shortly after Talarico had lost sight of the suspect van in an alley a short distance away;

- the two vans were both white and both had a license plate with the initial letter "G";

- at the time Plaintiffs' van was first spotted, its engine was running, its brake lights were on, and it was parked deep in the driveway of the residence near the Plaintiffs' house;

- Romanski was aware that the suspect van was implicated in a home invasion incident in Millcreek involving shots fired and two males suspects;  and

- upon arriving at the Plaintiffs' residence, Romanski observed Maria being apprehended next to a white van.

Romanski testified that, based on his training and experience, he believed that the two suspect males had fled the van into the back yard of the residence.  Upon arriving in the backyard, he observed that the screen door to the rear entrance had been removed from the door frame and the interior sliding glass door was partially open. In light of these circumstances he inferred that the two male suspects, who were believed to be armed, had entered the house.  Romanski therefore entered the residence, accompanied by other officers, in order to search for the suspects.

In its verdict, the jury found that Romanski had failed to prove that his search was justified either as a protective sweep or by exigent circumstances.  Notwithstanding this, we conclude that the evidence at trial was such that a reasonable officer in Romanski's situation could believe the warrantless search of the house to be lawful under one or both of the foregoing exceptions.  Accordingly, we conclude that Romanski is entitled to qualified immunity.

Plaintiffs contend that there is no claim in Romanski's Rule 50(b) motion that he had probable cause to search the plaintiffs' home without a warrant, but that is the clear implication of Romanski's motion.  Similarly, Plaintiffs object that Defendants' motion

does not expressly state that someone was in imminent danger within their home but, again, that is also clearly implied given Romanski's stated belief that armed individuals had entered a home (possibly not theirs) while attempting to elude the police after having committed a serious felony.  For purposes of qualified immunity, a reasonable officer facing these circumstances could have believed that the situation at hand presented a risk of imminent harm to individuals within the house or to the numerous officers on scene and that, as a result, a warrantless entry into the house was lawful. *See Brigham City, Utah v. Stuart,* 547 U.S. at 403-04 ("[L]aw enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury.") (citation omitted); *Georgia v. Randolph*, 547 U.S. 103, 118 (2006) ("[I]t would be silly to suggest that the police would commit a tort by entering ... to determine  whether violence (or threat of violence) has just occurred or is about to (or soon will) occur").

        Plaintiffs further posit that Romanski lacked jurisdiction to arrest a suspect for a Millcreek crime.  This point seems dubious, particularly in light of the fact that Romanski was personally almost struck by the suspect van within the City of Erie while it was driving recklessly through the city streets.  The point is flatly rejected by Defendants and is unaccompanied by any citation to authority.  Accordingly, we do not view this argument as a basis for defeating Romanski's request for qualified immunity.

        Plaintiffs next argue that Romanski has failed to demonstrate a true "hot pursuit" for purposes of establishing exigent circumstances because that pursuit was not completely continuous and uninterrupted.  We cannot agree that the record here renders the hot pursuit doctrine inapplicable.  The short lapse of time which occurred

between the point at which Talarico lost site of the suspect van and the point at which

Plaintiffs' van (matching the general description) was discovered a short distance away

is not legally sufficient, in this Court's view, to take this case outside the parameters of

the "hot pursuit" doctrine as it has been understood and applied by federal courts.[2]

Plaintiff also suggests that Romanski could not have been acting as a reasonable

police officer given that other officers on scene – in particular, Officers Peter Dregalla

and Melanie Szoszorek -- perceived that the Plaintiffs' van could not have been involved

in the home invasion and high speed chase because the hood of the vehicle was not

hot. The answer to this is that Dregalla and Szoszorek arrived at the Plaintiffs' residence

toward the end of the incident -- after Maria had already been apprehended, Romanski

and other officers had entered the house, and the scene had been secured.  The fact

that Romanski did not take the time upon his initial arrival to feel the van does not make

his claim for qualified immunity untenable given that a reasonable officer in his situation

could have believed that he was in legitimate pursuit of fleeing armed felons.  Notably,

this same theory was advanced by Plaintiffs at trial, yet the jury found that there was

probable cause to justify McLaughlin's arrest of Maria.  By implication, the jury also

necessarily found that the initial information available to officers on scene established

probable cause for them to believe (albeit mistakenly) that the Plaintiffs' van was the

one they had been pursuing.  This consideration supports Romanski's plea of qualified

immunity.

_____

[2] Plaintiffs have cited no authority which persuasively supports their argument as to a lack of hot pursuit. Their reliance on Pennsylvania authority, *see Commonwealth v. McPeak,* 708 A.2d 1263 (1998), is not pertinent here, as we are concerned only with federal search and seizure principles.  Plaintiffs' reliance on *United States v. Getz,* 381 F. Supp. 43 (E.D. Pa. 1974), is similarly unavailing inasmuch as that case addresses the issue of "hot pursuit" in the context of a Pennsylvania statute.

Finally, Plaintiffs posit that the officers' entry into the home was merely a pretext for conducting a search for Maria's brothers (who were, in fact, no longer living there). Plaintiffs direct us to evidence showing that, prior to the officers' entry into the home, Romanski's partner announced that there were warrants outstanding for Carols Arenas and Jose Arenas, Jr.. However, this argument lacks relevancy because the standard for determining exigent circumstances is an objective one:  "An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'" *Brigham City, Utah v. Stuart,* 547 U.S. at 404 (quoting *Scott v. United States*, 436 U.S. 128, 138 (1978)) (emphasis in the original).  Thus, "[t]he officer's subjective motivation is irrelevant."  Id. (citation omitted).

The foregoing considerations lead this Court to conclude that Romanski is entitled to a grant of qualified immunity.  Even if Romanski failed to meet his burden of proving that his entry into Plaintiffs' home was justified as a protective sweep or as an exigency, he has established that a reasonable officer in his position could have believed that entry into the home fell within those exceptions to the warrant requirement. Accordingly, Defendants' Rule 50(b) motion will be granted insofar as it relates to the Plaintiffs' Fourth Amendment claims against Officer Romanski.

## V.    CONCLUSION

Based upon the foregoing reasons, Defendants' post-trial motion pursuant to Rule 50(b) of the Federal Rules of Civil Procedure will be denied insofar as it relates to Plaintiff Maria Arenas-Jordan's § 1983 claim against Sergeant Talarico for arrest without

probable cause.  The motion will be granted insofar as it relates to Plaintiffs' § 1983 claims against Officer Richard Romanski arising out of the search of their home.

An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| BRANDON JORDAN, a minor,<br>MARIA M. ARENAS-JORDAN,<br>and JOSE ARENAS, | )<br>)<br>)<br>) | |
| Plaintiffs, | ) | Case No.  1:09-cv-88-SJM-SPB |
| | ) | |
| v. | )<br>) | |
| CORPORAL TODD McLAUGHLIN,<br>OFFICER ANTHONY TALARICO, and<br>OFFICER RICHARD ROMANSKI, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

## ORDER OF JUDGMENT

AND NOW, *to wit*, based upon the reasons set forth in the accompanying

Memorandum Opinion,

IT IS ORDERED that Defendants' Post Trial Motion [53] pursuant to Rule 50(b)

of the Federal Rules of Civil Procedure shall be, and hereby is, DENIED in part and

GRANTED in part as follows:

1. The motion is DENIED insofar as it relates to Plaintiff Maria Arenas-Jordan's claim under 42 U.S.C. § 1983 against Officer Anthony Talarico premised upon the Plaintiff's arrest.

2. The motion is GRANTED insofar as it relates to Plaintiffs' claim under 42 U.S.C. § 1983 against Officer Richard Romanski premised upon the search of Plaintiffs' home.  In accordance with this ruling, JUDGMENT shall be, and hereby is, entered in favor of Defendant Romanski and against Plaintiffs Brandon Jordan, Maria Arenas-Jordan, and Jose Arenas with regard to said claim.

s/    <u>Sean J. McLaughlin</u>

Sean J. McLaughlin
United States District Judge

cm:    All counsel of record.