**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

BRANDON JORDAN, a minor, by )
MARIA M. ARENAS-JORDAN, *et al.,* )
                                   )
          Plaintiffs, )          Civil Action No. 09-88 Erie
                                     )
          v. )          Chief District Judge Joy Flowers Conti
                                     )
OFFICER JAMIE RUSSO, )
*et al.,* )
                                     )
          Defendants. )

## <u>MEMORANDUM OPINION</u>

       This matter arises out of an incident which occurred in the early morning hours of September 26, 2007, when Erie police officers, responding to a report of an armed home invasion, became involved in a high-speed vehicular chase which inadvertently led them to the home of Jose Arenas, Maria M. Arenas-Jordan and Brandon Jordan (collectively "Plaintiffs"). Mistakenly believing that a white minivan parked in Plaintiffs' driveway was the one they had been pursuing, police officers ordered its driver, plaintiff Maria M. Arenas-Jordan (hereinafter, "Maria Jordan" or "Maria"), to exit the minivan at gunpoint and placed her under arrest. They entered Plaintiffs' home, where they encountered plaintiffs Jose Arenas (Maria Jordan's father) and Brandon Jordan (Maria's stepson). The van which the officers had been pursuing was later found abandoned in a nearby alleyway, resulting in Maria Jordan's release from custody without the filing of any criminal charges.

       Plaintiffs filed this lawsuit in which they assert various violations of their federal constitutional rights. The matter was originally assigned to District Judge Sean J. McLaughlin, who presided over pretrial proceedings, a four-day jury trial, and post-trial motions practice.

Judge McLaughlin resigned in August 2013 and the case was transferred to the undersigned judge on August 28, 2013.

Presently pending before this court are Plaintiffs' amended motion for costs and attorney fees (ECF No. 68) and the renewed motion for partial reimbursement of their costs pursuant to Rule 68 of the Federal Rules of Civil Procedure filed by defendants Officer Todd McLaughlin ("McLaughlin"), Officer Anthony Talarico ("Talarico"), and Officer Richard Romanski ("Romanski" and together with McLaughlin and Talarico collectively "Defendants").  For the reasons set forth below, Plaintiffs' motion will be denied with respect to their request for attorney's fees and granted to the extent that plaintiff Maria Jordan will be awarded $350.00 in costs.  Defendants' motion will be granted to the extent that they will be awarded $1,308.75 in costs.

## I. Factual Background

The underlying facts in this case were previously summarized by Judge McLaughlin as follows:

> At approximately 1:44 a.m. on the morning of September 26, 2007, the Millcreek Township Police Department received a dispatch concerning a home invasion and shots fired at a west-side Millcreek residence. The assailants were described as being two black males wearing hats with the word "police" on them and t-shirts with the same lettering. The vehicle in which they fled was described as a white minivan heading east toward the City of Erie.  Initially, no vehicle plate information was known.
>
> Sergeant Anthony Talarico[1] of the Erie Bureau of Police received the foregoing information and took up pursuit of the vehicle. The white minivan proceeded through the City of Erie at a high rate of speed, disregarding stop signs and stop lights.  Because of the high speed at which the vehicle was traveling, Talarico could not get close enough to read the vehicle plate.  Another unit occupied by Erie police officers William Goodzich

---

[1] At the time of the events giving rise to this lawsuit, Anthony Talarico held the rank of Sergeant, and he was referred to as "Sergeant Talarico" throughout this record.  For the sake of consistency, this court will do the same, except that he may also be referred to as "Talarico."   The court notes, however, that Anthony Talarico currently holds the rank of Lieutenant.  (*See* Ex. KK to Defs.' Br. in Supp. of Mot. for Summ. Judg. [ECF No. 27-38] at 4-5.)

and Richard Romanski heard the dispatch and joined the pursuit. Their unit was nearly struck head-on by the minivan as it continued eastward through the City of Erie.

At approximately 1:55 a.m., Sergeant Talarico lost sight of the vehicle near an alleyway between Ash and Wallace Streets. Prior to losing sight of the vehicle, Talarico was able to determine that the license place started with the letter "G." This information was given out over the air to other police units that had joined in the pursuit.

Soon after Talarico had lost sight of the van, Erie police officers Jamie Russo and Gabriel Amory located a white Dodge Caravan with a grey bumper, tinted windows, and a license plate beginning with a "G" in the driveway of 655 East 5th Street. Unbeknownst to the officers, this address was the residence of Plaintiffs Maria Arenas–Jordan ("Maria"), her 10 year-old step-son Brandon Jordan ("Brandon"), and her father Jose Arenas ("Jose"), none of whom had had any involvement in the Millcreek home invasion or ensuing chase.

At the time Officers Russo and Amory spotted the white Dodge Caravan, it was stationary with the engine running and brake lights on and it was deep in the driveway toward the back yard of the residence. Its sole occupant was Maria, a 22–year old white, Hispanic female who was preparing to leave her house so that she could pick her husband up from work.

Before Maria could leave her driveway, Russo and Amory backed up to block the driveway and approached the minivan on foot. With guns drawn, they ordered her out of the vehicle and onto the driveway in a prone position. During this time, other Erie police officers arrived on scene, including Corporal Todd McLaughlin,[ ] who handcuffed Maria and placed her in his cruiser up the street. Sergeant Talarico arrived on scene after Maria had been arrested and, upon observing her apprehended, made reference to her as the "retard" who had been driving the van.

Meanwhile, Officer Romanski had proceeded to the rear of the house and announced over his radio that there was an open door. The rear entrance consisted of a sliding glass door with no locking mechanism which was partially open. The outer screen door to this entrance had been removed from its track and was resting nearby. Officer Romanski entered the residence along with numerous other officers. Outside the house, various other officers took up various positions in the front and back yards.

Once inside the house, Romanski helped clear the second floor as other officers cleared the rest of the house. While on the second floor, Officer Romanski entered Brandon's bedroom. What occurred at this point was disputed at trial. While Brandon testified that Romanski pointed his hand gun at Brandon's head at close range, Romanski testified that he entered the room with his weapon in low ready position and merely asked to see Brandon's hands and inquired whether he was alright and whether anyone else was in the room. During the officers' sweep of the second floor, they also encountered Jose Arenas ("Jose").

After clearing the house, Officers James Bielak and Steven DeLuca exited the residence. At 2:13 a.m., they located a white Plymouth Voyager minivan with a license plate beginning with the letter "G" in an alley near the Plaintiffs' residence—the same area where Talarico had reported losing sight of the vehicle. Inside the van was a police

scanner radio, black gloves, and a hat with the word "police" on it. The van was eventually taken into custody by Millcreek police officers and processed.

In the meantime, various Erie police officers on scene at 655 East 5th Street were independently concluding that the Plaintiffs' Dodge Caravan was not the vehicle involved in the Millcreek incident. Officer Peter Dregalla arrived on scene and stayed only briefly. After feeling the hood of the van and finding it to be cold, he left to continue the search. Officer Melanie Szoszorek similarly left the scene after learning that the van's hood was cold.

Corporal McLaughlin also became aware that the hood of the van was cold. Based on the van's temperature and Maria's explanation that she was on her way to pick up her husband from work, McLaughlin began to conclude that Maria was not a suspect, and he attempted to convey this information to Talarico.

Talarico acknowledged at trial that he too began to have doubts about whether Maria's minivan was the one he had been pursuing. Nevertheless, Maria remained in custody at his direction pending the arrival of Millcreek police units, which were en route to the scene.

Exactly how long Maria remained detained in McLaughlin's cruiser is a matter of some uncertainty. Defendants claim that the entire incident lasted approximately seventeen minutes, based on police dispatch reports. However, there does not appear to be any documentation as to the precise time of Maria's release.

*Jordan v. McLaughlin,* No. 1:09–cv–88–SJM, 2013 WL 1182746, at *1-3 (W.D. Pa. Mar. 21, 2013).[2]

## II. Procedural History

Plaintiffs commenced the instant lawsuit on April 15, 2009, with the filing of their complaint against Talarico, McLaughlin, Romanski, and eleven other officers of the Erie Police Department who were on the scene at Plaintiffs' residence during the incident in question. (ECF No. 1.) Plaintiffs' complaint asserted four counts under 42 U.S.C. §1983.[3] Count I asserted a

---

[2] Although the lead defendant, Officer Jamie Russo, was terminated as a party prior to the court's submission of the case to the jury, the case caption was never formally amended to reflect this fact. Accordingly, the proper caption for this case is "Jordan v. Russo," notwithstanding the court's prior use of the caption "Jordan v. McLaughlin."

[3] This statute provides a private right of action against:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the

general claim for damages for the injuries Plaintiffs allegedly sustained as the result of the violation of their constitutional rights. (Compl. ¶¶ 24-25.) Count II asserted a violation of Maria Jordan's Fourth Amendment rights premised upon her alleged false arrest and detention. (Id. ¶¶ 26-28.) Count III asserted a Fourth Amendment claim on behalf of all three Plaintiffs as a result of the allegedly illegal search of their home. That count also asserted a Fourth Amendment claim based upon an allegedly illegal search of Maria Jordan's purse. (Id. ¶¶ 30-35.) Count IV asserted claims of excessive force based upon Defendants' display of deadly force when they allegedly pointed loaded guns at Plaintiffs at various points during the incident in question. (Id. ¶¶ 36-42.) As Judge McLaughlin previously observed, the four counts in the complaint "effectively asserted six different claims premised upon violations of the Plaintiffs' Fourth Amendment rights—namely, excessive force claims on behalf of each Plaintiff arising out of their respective confrontations with the armed officers, a claim by Maria for arrest without probable cause, a claim premised on the allegedly unreasonable search of the Plaintiffs' home, and a claim premised on the allegedly unreasonable search of Maria's purse." *Jordan*, 2013 WL 1182746, at *3.

On September 30, 2009, the parties attempted unsuccessfully to mediate their claims at an early neutral evaluation conference. (ECF No. 12.) On October 20, 2009, Defendants made an offer of judgment in the amount of $10,000.00 "in settlement of all counts contained in the complaint inclusive of plaintiff's [sic] claim under Section 1988 for counsel fees together with all costs that have now accrued." (Defs.' Mot. for Costs Pursuant to Rule 68, Ex. 1 [ECF No.

---

United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws…

42 U.S.C. §1983. This court's subject-matter jurisdiction over the instant case is premised upon 28 U.S.C. §§1331 and 1343(a).

52-1] at 3.)  The offer was rejected by virtue of Plaintiffs' failure to accept it within fourteen days.  *See* Fed. R. Civ. P. 68(a), (b).

Following discovery, Defendants filed a motion for summary judgment.  By Memorandum Opinion and Order filed on September 28, 2011 (ECF No. 35), Judge McLaughlin granted Defendants' motion in part and denied it in part.  Specifically, the court granted summary judgment in favor of Defendants with respect to Maria Jordan's claim of excessive force in connection with her arrest as well as Jose Arenas' claim of excessive force in connection with the search of Plaintiffs' house.  The court also entered judgment in favor of three officers (Melanie Szoszorek, Luke Yates, and Peter Dregalla) who were not personally involved in the allegedly unconstitutional conduct.  The court denied Defendants' summary judgment motion as to all Plaintiffs' remaining claims.  (Mem. Op. and Order of Judgment [ECF No. 35] at 30-31.)

In May 2012, Judge McLaughlin presided over a four-day trial.  In the course of those proceedings, all the remaining defendant officers, other than McLaughlin, Talarico and Romanski, were dismissed from the case or were granted a directed verdict based on a lack of personal involvement in the allegedly tortious conduct.  *See Jordan*, 2013 WL 1182746, at *3. In addition, the court granted a directed verdict for the defense with respect to Maria Jordan's Fourth Amendment claim stemming from the search of her purse.  Id.  The three remaining claims were submitted to the jury.  Brandon Jordan's excessive force claim against  Romanski resulted in a defense verdict (ECF No. 48).  Maria Jordan's Fourth Amendment claim for false arrest resulted in a split verdict, *to wit:*  the jury found in favor of McLaughlin, but against Talarico and awarded Maria nominal damages of $1.00 (ECF No. 49).  With respect to Plaintiffs' Fourth Amendment claim premised on the warrantless search of their home, the jury entered a verdict in favor of Plaintiffs and awarded them each $1.00 in nominal damages (ECF No. 50).

Following the court's entry of judgment (ECF No. 51), Defendants Talarico and Romanski filed a motion under Rule 50(b) for judgment as a matter of law on grounds of qualified immunity (ECF No. 53). Defendants also filed a motion for taxation of costs pursuant to Rule 68 of the Federal Rules of Civil Procedure (ECF No. 52). The latter motion was based on the unaccepted offer of judgment which Defendants had extended to Plaintiffs on October 20, 2009. (ECF No. 52-1).

Plaintiffs, in turn, filed their own motion for costs and attorney's fees. (ECF No. 56). Based upon Plaintiffs having prevailed at trial on two of their §1983 claims, they sought $84,997.15 in counsel fees and costs. Plaintiffs amended their motion on March 12, 2013, asking that the court award an additional $7,050.00 in counsel fees for work performed by their attorney in connection with post-trial motions practice. (ECF No. 68). In total, Plaintiffs request $89,460.00 in attorney's fees and $2,371.90 in costs.[4]

On March 21, 2013, Judge McLaughlin entered an Order of Judgment (ECF No. 71) granting Defendants' Rule 50(b) motion insofar as it related to Plaintiffs' claim against Romanski based upon the warrantless search of their home.[5] *See Jordan,* 2013 WL 1182746, at **9-12. Judge McLaughlin denied the motion as it related to Maria Jordan's claim against Talarico based upon her warrantless arrest and detention. *Id.* at *7-9, 12. No appeal was taken from that ruling. At this juncture, the only claim which resulted in a verdict in Plaintiffs' favor is

---

[4] Plaintiffs originally sought $2,587.15 in costs but, as is discussed, that figure was adjusted downward to reflect Plaintiffs' abandonment of one particular item of costs.

[5] That same day, Judge McLaughlin entered an order denying Defendants' motion for costs without prejudice to be reasserted following the court's disposition of Plaintiffs' amended motion for attorney's fees and costs (ECF No. 70). In the course of briefing Plaintiffs' entitlement to attorney's fees and costs, Defendants renewed their request for taxation of post-offer costs. (*See* Defs.' Br. in Opp. to Pls.' Amended Mot. for Costs and Attorney's Fees [ECF No. 72] at 3.) The court will discuss Defendants' renewed motion for costs in more detail, *infra.*

Maria Jordan's Fourth Amendment claim for unlawful arrest by Talarico, for which the jury awarded her $1.00.

### III. Discussion

A. <u>Plaintiffs' Motion for Counsel Fees and Costs</u>

Pursuant to 42 U.S.C. §1988, a district court, in its discretion, may allow the prevailing party in a §1983 lawsuit a "reasonable" attorney's fee as part of the costs. 42 U.S.C.A. §1988(b). In *Farrar v. Hobby,* 506 U.S. 103 (1992), the United States Supreme Court held that civil rights plaintiffs who receive only nominal damages are "prevailing parties" for purposes of §1988. 506 U.S. at 112, 113. The Court reasoned that "[a] judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 113. Consequently, there is no dispute that Maria Jordan is a "prevailing party" with respect to her claim against Sergeant Talarico.

Based on Maria Jordan's "prevailing party" status, Plaintiffs seek a total of $89,460.00 in attorney's fees and $2,371.90 in costs. Defendants oppose this request, arguing that the Plaintiffs' limited success in this litigation precludes an award of counsel fees. Alternatively, Defendants contend that Rule 68(d)'s cost-shifting provision bars Maria Jordan from recovering any counsel fees and costs incurred after the date of the offer of judgment and, in fact, obligates Plaintiffs to pay Defendants' post-offer costs. Finally, Defendants argue that, even under a traditional lodestar calculation, certain aspects of Plaintiffs' reimbursement request are improper and should be denied or adjusted downward. Plaintiffs, on the other hand, maintain that their fee request is appropriate notwithstanding Maria Jordan's nominal verdict. They also assert that Rule 68(d)'s cost-shifting provision is inapplicable because (a) Defendants' unapportioned offer

of judgment was invalid or (b) the judgment obtained by Plaintiffs exceeds Defendants' offer. The court must assess Plaintiffs' motion for costs and fees and Defendants' request for post-offer costs in light of the jury's nominal damages verdict and Defendants' Rule 68 offer of judgment.

### 1. Plaintiffs' Request for Counsel Fees

Although the Court in *Farrar* ruled that a plaintiff could be considered a "prevailing party" notwithstanding an award of nominal damages, the Court also recognized that the "'technical' nature" of a nominal damages award "bear[s] on the propriety of fees awarded under §1988." 506 U.S. at 114. "'[T]he degree of the plaintiff's overall success goes to the reasonableness' of a fee award under *Hensley v. Eckerhart,* [461 U.S. 424 (1983)],'" 506 U.S. at 114, and in fact is "'the most critical factor'" in determining reasonableness. *Id.* (quoting *Hensley,* 461 U.S. at 436). Consequently, "'[w]here recovery of private damages is the purpose of … civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.'" *Farrar,* 506 U.S. at 114 (quoting *Riverside v. Rivera,* 477 U.S. 561, 585 (1986) (Powell, J., concurring in judgment)). Once the trial court considers the amount and nature of damages awarded, "[it] may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness, *see Hensley*, 461 U.S., at 430, n. 3, 103 S. Ct., at 1937-1938, n. 3, or multiplying 'the number of hours reasonably expended ... by a reasonable hourly rate,' *id.* at 433, 103 S. Ct. at 1939." *Farrar,* 506 U.S. at 115. The Supreme Court admonished in *Farrar* that "[w]hen a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief [i.e., lack of a compensable injury], … the only reasonable fee is usually no fee at all." *Id.* at 115 (internal citation omitted).

In a concurring opinion, Justice O'Connor expounded upon the principle that "[w]hen the plaintiff's success is purely technical or *de minimis*, no fees can be awarded." *Farrar,* 506 U.S. at 117. Although she acknowledged that "a substantial difference between the judgment recovered and the recovery sought suggests that the victory is in fact purely technical," *id.* at 121 (citation omitted), Justice O'Connor opined that this should not be the district court's only consideration. *Id.* Also relevant, in her view, were "the significance of the legal issue" on which the plaintiff prevailed, *id.,* and consideration as to whether the plaintiff's verdict "also accomplished some public goal other than occupying the time and energy of counsel, court and client." *Id.* at 121-22.

In *Jama v. Esmor Correctional Services, Inc.,* 577 F.3d 169 (3d Cir. 2009), a case brought under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb *et seq.,* the Court of Appeals for the Third Circuit held that the prevailing plaintiff might be entitled to attorneys' fees despite having received only nominal damages. *Id.* at 171, 173. In so holding, the court cited the considerations highlighted in Justice O'Connor's *Farrar* concurrence (i.e., the difference between the relief sought and achieved, the significance of the legal issue decided, and whether the litigation served a public purpose) as factors that would be helpful to the court's fee determination. 577 F.3d at 176.

Further guidance on this issue was provided by the court of appeals in *Velius v. Township of Hamilton,* 466 F. App'x 133 (3d Cir. 2012). Concerned that its decision in *Jama* "may have muddied the waters after *Farrar,*" 466 F. App'x at 140, the court in *Velius* clarified that its decision in *Jama* "did not and could not circumscribe the broad discretion *Farrar* conferred upon district judges" in determining the propriety of fee awards in nominal damages cases. *Velius,* 466 F. App'x at 140. The court explained that its "'adopt[ion]' of Justice O'Connor's factors

must be understood only as an endorsement of the use of those considerations by trial judges who believe the case before them may present the rare situation in which success on the claim justifies attorneys' fees despite the technical victory manifested by an award of nominal damages." *Id.* The court expounded on its interpretation of the *Farrar* decision:

> We read *Farrar* to grant district courts substantial discretion to decide whether no fee or some fee would be reasonable, as long as they acknowledge that a nominal damages award is presumptively a technical victory that does not merit an award of attorneys' fees. Whenever the trial court determines that no fee or a low fee is proper, *Farrar* eliminates the need to apply multi-factor tests or calculate the lodestar. Indeed, *Farrar* permits a district court to determine the amount of any low fee award it deems is warranted by whatever means it chooses in its broad discretion. *See Farrar*, 506 U.S. at 115, 113 S. Ct. 566. Although we have cited favorably the factors noted by Justice O'Connor, *Farrar* does not establish any rule strictly governing when a nominal damages award signals *de minimis* success or dictating how fees must be calculated if a court determines that a low fee is appropriate. The only requirement that remains intact for awarding attorneys' fees in nominal damages cases is that if the court decides to award something other than no fee or a low fee, it must conduct a lodestar analysis.

466 F. App'x at 140-41.

Applying these principles to the case at bar, the court finds that no fee award is appropriate. As an initial matter, it must be noted that the recovery of private damages was the purpose of this litigation. This conclusion is borne out by the complaint, in which Plaintiffs alleged injuries consisting of: (a) the violation of their federal Fourth Amendment rights; (b) loss of physical liberty; and (c) "[e]xtreme emotional distress, suffering, humiliation, and embarrassment." (Complaint [ECF No. 1] ¶ 23.) Count I of the complaint expressly sought damages for these alleged injuries. (*Id.* ¶ 25.) In addition, the *ad damnum* clause of the complaint sought only compensatory and punitive damages, attorney fees and costs, and "such other and further relief as [the] Court shall consider to be fair and equitable." (*Id.* ¶ 43.) No prayer for declaratory or injunctive relief was included. (*Id.*)

Because the recovery of private damages was the purpose of this litigation, the court, in fixing fees, is "obligated to give primary consideration to the amount of damages awarded as compared to the amount sought." *Farrar*, 506 U.S. at 114. Unfortunately, the record before the court fails to provide any clear indication of the amount of damages sought by Plaintiffs. Although the complaint seeks monetary damages, it does not specify a particular amount. Defendants represent that Plaintiffs failed to include a computation of their alleged damages as part of their initial disclosures, contrary to the requirements of the Federal Rules of Civil Procedure.[6] (*See* Defs.' Br. in Resp. to Pls.' Resp. to Motion for Rule 68 Costs [ECF No. 65] at 4-5.) At trial, according to Defendants, Plaintiffs "did not argue for specific, individual damages" but "simply requested redress for [the] violation of plaintiffs' constitutional rights." (*See id.* at 4.) Indeed, the only indication in the record before the court relative to the amount of damages sought in this case comes from a report of the parties' early neutral evaluation. According to this report, as of September 30, 2009, Plaintiffs' aggregate "bottom-line demand" was $25,000.00 (ECF No. 12). Since Plaintiffs did not accept the $10,000.00 offer of judgment, Maria Jordan's recovery of $1.00 can only be considered a small fraction of the damages sought. Out of the six distinct civil rights violations which Plaintiffs asserted against the fourteen original Defendants, only one Plaintiff ultimately prevailed only on one claim against one Defendant. Consideration of these factors suggests a low degree of success on the part of Plaintiffs.

Justice O'Connor's concurrence in *Farrar* and the Court of Appeals for the Third Circuit's decisions in *Jama* and *Velius* suggest that this court can also consider, in its discretion,

---

[6] Pursuant to Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, "a party must, without awaiting a discovery request, provide to the other parties … (iii) a computation of each category of damages claimed by the disclosing party --- who must also make available … documents or other evidentiary material ... on which each computation is based, including materials bearing on the nature and extent of injuries suffered..." Fed. R. Civ. P. 26(a)(1)(A)(iii).

the significance of the legal issue on which Maria Jordan prevailed as well as the public value, if any, of her verdict. Neither factor supports a fee award in this case.

One way of assessing the significance of the prevailing legal issue is to examine whether the legal issue was a "central aspect" of the plaintiff's entire claim. *Haines v. Forbes Road School Dist.*, Civil Action Nos. 1:07-cv-00851, 1:07-cv-00852, 2010 WL 56101, at *3 (M.D. Pa. Jan. 5, 2010) ("Courts have assessed [the significance of the legal issue on which the plaintiff prevailed] in one of two very different ways: either by examining whether the legal issue on which the plaintiff prevailed was a central aspect of her entire claim, or by examining the importance of the legal right upon which the plaintiff prevailed as compared to other legal rights generally.") (citing decisions). To that end, the court notes that there were at least three central aspects to Plaintiffs' case: the allegedly unlawful arrest of Maria Jordan, the officers' allegedly unlawful entry into Plaintiffs' home, and their alleged use of excessive force – particularly as it related to Romanski's encounter with Brandon Jordan. Ultimately, Maria Jordan did prevail on her false arrest claim; however, even as to this claim, the jury rendered a split verdict, as it found in favor of McLaughlin but against Talarico (ECF No. 49).[7]

Courts also assess the significance of the prevailing legal issue "by examining the importance of the legal right upon which the plaintiff prevailed as compared to other legal rights generally." *Haines,* 2010 WL 56101, at *3. For example, in *Buss v. Quigg*, 91 F. App'x 759 (3d Cir. 2004), the Third Circuit Court of Appeals upheld an award of attorney fees in a nominal damages case, reasoning that the jury's "determination that Buss and her family had acted rightly

_____

[7] As Judge McLaughlin previously explained, "the jury found that Corporal McLaughlin did not violate Maria's Fourth Amendment rights in placing her under arrest and detaining her in the back of the police cruiser. On the other hand, the jury found that Sergeant Talarico did violate Maria's Fourth Amendment rights, presumably on the basis that he continued to detain her in the police cruiser even after probable cause had dissipated." *Jordan,* 2013 WL 1182746, at *6.

in defending their Fourth and Fourteenth Amendment rights is significant relief under *Farrar,"* especially when "coupled with the legal significance of unreasonable search and seizure and the public purpose of deterring such behavior." Id. at 761; *see Halpin v. Gibson,* Civil No. 05-2088, 2009 WL 3271590, at *8 (D.N.J. Oct. 9, 2009) (noting that a plaintiff succeeded on her Fourth Amendment right to be free of unlawful arrest and that "[t]his is undoubtedly an important constitutional right that must be protected") (citing *Buss,* 91 F. App'x at 761); *Butler v. Frett,* Civil No. 99–4367, 2006 WL 1806412, at *6 (D.N.J. June 29, 2006) (contrasting the significance of the plaintiff's excessive force claim with the injury to a business interest alleged in *Farrar*).

While the importance of Fourth Amendment rights cannot be doubted, it is unclear how strongly this factor should weigh in favor of an award of attorney's fees in the face of a nominal verdict. Notably, the foregoing authorities predate the decision in *Velius,* in which the Third Circuit Court of Appeals admonished that "every civil rights case in which the plaintiff prevails on the merits vindicates some right" and, therefore, "it cannot be the case that the mere vindication of rights alone suffices to distinguish those cases in which the presumption of no fee is overcome." *Velius,* 466 F. App'x at 141 n.4.

Insofar as the importance of Maria Jordan's right to be free from unlawful arrest is concerned, there are some attenuating circumstances which the court must acknowledge. As Judge McLaughlin discussed in his memorandum opinion disposing of Defendants' Rule 50(b) motion, Sergeant Talarico claimed that he made the decision to keep Maria in custody even after developing doubts about her involvement in the Millcreek home invasion incident because he understood that Millcreek police units were en route to the scene and he felt it was best to detain her pending their arrival in case they possessed information that the Erie police officers lacked.

14

*Jordan,* 2013 WL 1182746, at *8. Talarico testified at trial that Maria Jordan had been placed in the police cruiser for the sake of her own protection, given the officers' belief that armed felons may have been on the premises. *Id.* The defense had maintained that Maria Jordan's wrongful detention in the cruiser (i.e., after probable cause for her arrest dissipated) had lasted for a relatively brief period of time – perhaps only minutes. *Id.* The wrongful detention had occurred in the immediate vicinity of Maria Jordan's house, such that she was "in a position to be released promptly once it was determined that there was no justification to continue her arrest." *Id.* Judge McLaughlin found these considerations insufficient to justify an award of qualified immunity in favor of Sergeant Talarico, but he noted that they "*may serve to underscore the technical nature of the constitutional violation.*" *Id.* (emphasis supplied). To the extent Maria Jordan has achieved vindication of a mere "technical" constitutional violation, this undermines her case for a fee award.

The court can consider whether Maria Jordan's success accomplished some public goal. In *Buss,* the court of appeals cited the "public purpose of deterring [unreasonable searches and seizures]" as one factor that supported the district court's determination that the plaintiff had achieved a significant degree of success in prosecuting her civil rights case to a nominal verdict. 91 F. App'x at 761. Here, however, the deterrence value of Maria Jordan's verdict against Talarico is more questionable given the "technical nature of the constitutional violation," *Jordan,* 2013 WL 1882746, at *8, and the unusual context in which Talarico's tortious conduct occurred. Significantly, the circumstances giving rise to Maria's detention involved an unlikely situation in which Plaintiffs' van, remarkably similar in many respects to the suspect van, was coincidentally located just minutes after the suspect van had last been seen just a short distance away. Because the operators of the suspect van had been driving in an extremely dangerous fashion and were

15

believed to be armed and dangerous, the events which transpired at Plaintiffs' home in the immediate aftermath of the vehicular chase were tense and rapidly evolving. The circumstances which led to Sergeant Talarico's prolonged seizure of Maria Jordan were unusual and unlikely to occur with any frequency in the future.

This situation is not one in which the litigation served a public purpose by clarifying an otherwise ambiguous area of the law. Here, Maria successfully proved the violation of her Fourth Amendment rights by convincing the jury that she had been detained in the officers' cruiser by Talarico for some period of time even after Talarico no longer had probable cause to believe that she was involved in the Millcreek home invasion incident. The legal issue on which she prevailed is a well-established one and did not chart any new waters in the area of federal constitutional jurisprudence. Indeed, Judge McLaughlin implicitly found as much when he denied Talarico's Rule 50(b) motion for qualified immunity. *Jordan,* 2013 WL 1182746, at *7-8 (noting that "the general right not to be subjected to a warrantless arrest in the absence of probable cause was clearly established in 2007" and concluding that neither of Talarico's professed reasons for detaining Maria could serve as a basis for granting Talarico qualified immunity).

Plaintiffs nevertheless insist that Maria's verdict represents more than a technical victory because, prior to the litigation, they had filed a private complaint which resulted in no disciplinary action being taken against the officers. Now, they claim, Talarico's supervisors are on notice that the jury found his conduct to be a violation of Maria's Fourth Amendment rights. There, however, is no indication in the record that Sergeant Talarico was ever disciplined as a result of the jury's nominal damages award in this case. On the contrary, as the court has indicated previously in footnote one, Talarico has since received a promotion in rank.

Plaintiffs urge this court to follow the rulings in *Buss, County of Morris v. Nationalist Movement,* 273 F.3d 527 (3d Cir. 2001), and *Haines v. Forbes Road School Dist.*, Civil Action Nos. 1:07-cv-00851, 1:07-cv-00852, 2010 WL 56101, at *3 (M.D. Pa. Jan. 5, 2010) – each of which involved civil rights lawsuits where the plaintiffs failed to receive compensatory damages, but were nevertheless deemed to be prevailing parties entitled to substantial counsel fees. Each of these cases, however, is distinguishable from the case at bar. In *Buss,* the court found that the "illegal entry" issue on which the plaintiff prevailed was a "central element" of her claim. 91 F. App'x at 761. Here, however, the false arrest claim was merely one of several central components of Plaintiffs' civil action, and Maria Jordan enjoyed only partial success on that claim, having failed to convince the jury that her initial arrest was unsupported by probable cause. In addition, the court in *Buss* found that the plaintiff's nominal verdict would serve as a deterrent for unreasonable searches and seizures in the future, whereas here (for the reasons just discussed), the court finds the deterrence value of Maria Jordan's verdict to be somewhat minimal.

In *County of Morris,* the court of appeals ruled that a defendant in a declaratory action lawsuit was a prevailing party and was eligible for an award of attorney fees. 273 F.3d at 535-36. Notably, the case did not involve an award of nominal damages and, therefore, the court did not discuss *Farrar* in the context of our present situation, which involves a plaintiff who primarily sought monetary relief, but failed to prove actual injury. *County of Morris* can be distinguished on the ground that the prevailing party in that case was found to have prevailed on "significant issues … to the extent that portions of [the County's policy relative to the private use of public facilities] were held unconstitutional." *Id.* at 536. In this case, there is no basis to conclude that a change in official policy was effectuated by the verdict in favor of Maria Jordan.

17

*Haines* also is readily distinguished from the case at bar. *Haines* involved a §1983 lawsuit by a student who had been sexually assaulted by a teacher. In determining that the plaintiff's nominal damages verdict was more than a *de minimis* or technical victory, the court found that the plaintiff had achieved substantial success because, among other things, the jury had found the defendant's behavior to be "wanton and malicious," indicating that it considered the constitutional violation to be a serious one, despite its decision not to award punitive damages. *Haines*, 2010 WL 56101, at *3. The court found that the plaintiff's reputation had been redeemed in the community, which was significant because she had previously been ostracized as a result of her allegations. The court found that the litigation served a significant public purpose because, among other things, the plaintiff's willingness to prosecute her case against a popular teacher had given another student the courage to come forward with her own allegations of sexual abuse by the same defendant and was likely to inspire similar victims to come forward in the future. *Id*. at *4. The court noted that the lawsuit "should have encouraged the school district to modernize its reporting policy for cases of teacher-student harassment, thereby further deterring misconduct and encouraging reporting by victims." *Id*. No comparable circumstances exist in the case at bar.

The court searched the record for any grounds that would justify a fee award, but could not find a basis to award counsel fees in this case. The court must conclude that an award of counsel fees is unwarranted and would not be reasonable in light of Maria Jordan's nominal damages verdict and lack of circumstances to support an award. Accordingly, Plaintiffs' request for attorney's fees will be denied.

## 2. *Plaintiffs' Request for Costs*

Plaintiffs also seek reimbursement of $2,371.90 in costs. Federal Rule of Civil Procedure 54(d) authorizes this court to award costs to Maria Jordan, given her status as a prevailing party, subject to Rule 68(d)'s cost-shifting provision. *See* FED. R. CIV. P. 54(d)(1) ("*Unless … these rules … provide[ ] otherwise*, costs… should be allowed to the prevailing party.") (emphasis added). *See also* LCvR 54(B) (discussing procedures for the taxation of costs in favor of a prevailing party). Consequently, in assessing Plaintiffs' motion for costs, the court must take into account Defendants' pretrial offer of judgment which was rejected by Plaintiffs. Rule 68 of the Federal Rules of Civil Procedure provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued." Fed. R. Civ. P. 68(a). If the offer is not accepted and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

In *Marek v. Chesny,* 473 U.S. 1 (1985), the Supreme Court recognized the validity of a Rule 68 offer which – like Defendants' offer in this case – included attorney's fees and costs as part of a lump sum figure. *See* 473 U.S. at 6 ("We do not read Rule 68 to require that a defendant's offer itemize the respective amounts being tendered for settlement of the underlying claim and for costs."). The Court conducted its Rule 68 analysis by adding the plaintiff's award of total damages (*i.e.*, $60,000) to his pre-offer "costs" – including attorney fees -- (*i.e.,* $32,000) and comparing that total figure ($92,000) to the defendants' lump sum offer ($100,000). *See* 473 U.S. at 3-5, 7. Since the amount ultimately recovered by the plaintiff did not exceed the defendants' Rule 68 offer, the Court found that the rule's cost-shifting provision was applicable. *Id.* at 7, 12; se*e Marryshow v. Flynn,* 986 F.2d 689, 692 (4th Cir. 1993) ("To make a proper

comparison between the offer of judgment and the judgment obtained when determining, for Rule 68 purposes, which is the more favorable, like 'judgments' must be evaluated. Because the offer includes costs then accrued, to determine whether the judgment obtained is 'more favorable,' as the rule requires, the judgment must be defined on the same basis -- verdict plus costs incurred *as of the time of the offer of judgment*.") (emphasis added).

In this case, Defendants made a pretrial offer of judgment in the amount of $10,000.00 pursuant to Rule 68, which was rejected by Plaintiffs. As in *Marek,* Defendants' offer specifically contemplated that the $10,000.00 figure would encompass counsel fees and costs then accrued. (*See* Ex. 1 to Defs.' Mot. for Costs Pursuant to Rule 68 [ECF No. 52-1] at 3.) Defendants maintain that the sum of Maria Jordan's verdict, plus her reasonable pre-offer counsel fees and costs, do not exceed $10,000.00. As a result, Defendants argue Rule 68(d)'s cost-shifting mandate applies and Maria Jordan is precluded from recouping any of her own post-offer costs.

Plaintiffs insist that Rule 68(d) is inapplicable here for two reasons: 1) Defendants' offer, unapportioned among the various Plaintiffs, was invalid; or 2) the sum of Plaintiffs' attorney's fees and costs which had accrued as of the time of Defendants' offer exceeded $10,000.00. These arguments will be addressed seriatim.

### a) DEFENDANTS' UNAPPORTIONED OFFER OF JUDGMENT IS VALID

Citing *Gavoni v. Dobbs House, Inc.,* 164 F.3d 1071 (7th Cir. 1999), Plaintiffs contend that Defendants' offer of judgment was invalid for purposes of Rule 68 because it gave them no meaningful basis for assessing the merits of the offer relative to their own individual claims. In *Gavoni,* the Seventh Circuit Court of Appeals affirmed the denial of costs for a defendant who had made a Rule 68 offer that was unapportioned among multiple plaintiffs. In that case, three

hotel guests who had been riding in an elevator when it malfunctioned later sued (among others) the hotel owner for injuries allegedly sustained as a result of the elevator malfunction. The hotel owner made a lump sum Rule 68 offer of $10,000.00, inclusive of costs, "to be divided among all three plaintiffs." *Gavoni*, 164 F.3d at 1074. The offer was rejected and a jury subsequently awarded the three plaintiffs damages totaling $6,500.00: *i.e.,* two of the plaintiffs were awarded $2,000.00 while another was awarded $2,500.00. Following the verdict, the hotel owner moved for costs pursuant to Rule 68. The trial court denied the defendant's motion and the Seventh Circuit Court of Appeals affirmed, holding that the defendant had failed to prove that its offer of judgment was more favorable than the judgment ultimately obtained by the plaintiffs. *Id.* at 1076. The court explained that there were two reasons why the defendant should bear the burden of proof on a Rule 68 cost-shifting motion:

> First, because Rule 68's cost-shifting provision is mandatory and applies to individual parties—the "*offeree must pay* the costs incurred" by the offeror, Fed. R. Civ. P. 68 (emphasis added) — plaintiffs face serious consequences in either accepting or rejecting a Rule 68 offer. ... A judgment less favorable than the offer requires that a plaintiff pay the defendant's usually substantial post-offer costs. There must therefore be a clear baseline from which plaintiffs may evaluate the merits of their case relative to the value of the offer. ... Further, plaintiffs should not have to speculate how courts will interpret an offer; "a defendant should state his intentions clearly, and any failure to do so will be at his peril." *Chambers v. Manning*, 169 F.R.D. 5, 8 (D. Conn. 1996) (citation omitted).

> Second, courts also need easily comparable sums. In applying Rule 68, courts have "no discretion to alter or modify the parties' agreement." ... Courts have therefore consistently resisted efforts by either party to qualify or explicate the terms of an accepted offer … or the terms of a rejected offer. … [ ] And there is good reason for this narrow approach: after-the-fact efforts to clarify offers "undermine the Rule's purpose of encouraging settlement and avoiding protracted litigation." ... On the other hand, clarifying the terms of an offer before it has been accepted or rejected furthers the purpose of the Rule. …

*Id.* (internal citations and footnote omitted).

In affirming the district court's denial of Rule 68 costs, the Court of Appeals for the Seventh Circuit in *Gavoni* rejected the defendant's invitation to either: (i) compare the $10,000.00 offer with the total value of the jury's verdict ($6,500.00) or (ii) use $3,333.00 (one third of the offer) as a point of comparison with the individual verdicts. The court was similarly unpersuaded by the defendant's (mathematically correct) argument that its Rule 68 offer had to have been more favorable than the individual judgment of at least one of the plaintiffs:

> These varied constructions of the single offer only underscore its fatal problem: imprecision. The plaintiffs simply could not have evaluated the individualized values of the offer. Similarly, without two precise figures to compare, the district court was in no position to resolve the lack of precision. And neither are we.

*Id.* The court concluded that requiring a defendant to apportion a settlement offer among the various plaintiffs would not undermine Rule 68's policy of encouraging settlement and might help avoid the potential for derivative litigation. *Id.* at 1077. *Accord Thomas v. National Football League Players Assoc.,* 273 F.3d 1124, 1130 (D.C. Cir. 2001) (indicating agreement with *Gavoni's* ruling "that an unallocated offer of judgment to multiple plaintiffs is not effective under Rule 68").

The Third Circuit Court of Appeals has not yet addressed the validity of Rule 68 offers that are unapportioned among multiple plaintiffs. *C.f. Le v. University of Pa.,* 321 F.3d 403, 408 (3d Cir. 2003) (recognizing the validity of a Rule 68 offer that was unapportioned between two defendants who shared a "single [financial] identity"). Nevertheless, because the facts in this case differ in significant respects from those that existed in *Gavoni,* this court is not persuaded that the rule of *Gavoni* renders Defendants' unapportioned offer ineffective.

Initially, it is noteworthy that *Gavoni* has not been interpreted by the Seventh Circuit Court of Appeals as establishing a "per se" rule that requires the delineation of individualized

Rule 68 offers in every case. *See Harbor Motor Co, Inc. v. Arnell Chevrolet-Geo, Inc.,* 265 F.3d 638, 649 (7th Cir. 2001) (applying *Gavoni*, but stating that the court "need not go so far as to conclude … that Rule 68 always requires an exact delineation of the manner in which damages are to be apportioned among multiple parties," as "[t]here might be circumstances where it would be clear to the district court how a settlement is to be shared among offerors and/or offerees"). *See Roska v. Sneddon,* 366 F. App'x 930, 941 (10th Cir. 2010)(citing *Harbor Motor Co.* for the proposition that "[c]ase law … does not go so far as to say a defendant must always apportion an offer between each plaintiff.").

The policy concerns underlying the *Gavoni* decision have less relevance in the context of this case where, at all times, there was an identity of interests among the Plaintiffs as well as among the Defendants. This point is well illustrated by the more factually analogous case of *Roska*. In *Roska*, a family sued various social workers under §1983 alleging that the defendants had violated their constitutional rights by removing one of the children from the family home without notice or a pre-removal hearing. Prior to trial, the defendants made a $5,000.00 lump sum offer of judgment to the plaintiffs in consideration of dismissal of the lawsuit. The plaintiffs refused the offer and went to trial, which resulted in their recovery of $2.00 in nominal damages. The plaintiffs subsequently filed a motion for attorney's fees and costs and the district court awarded both, but only as to fees and costs which had accrued up to the date of the defendants' offer. On appeal, the plaintiffs argued that the defendants' offer of judgment should not have been given effect because it did not specifically allocate the amounts intended to compensate each plaintiff. The Tenth Circuit Court of Appeals rejected this argument, concluding that the district court was not required, as a matter of law, to consider the unallocated offer of judgment ineffective. *Roska*, 366 F. App'x at 941. The court explained that, "[w]hile the practice of

allocating the offer as to each plaintiff may increase clarity and ensure the offer is valid, such requirement in every instance would place form over substance." *Id.*

The court of appeals articulated several reasons why the ruling in *Gavoni* did not require a nullification of the defendants' offer in *Roska*. First, the court found the facts before it to be distinguishable from those involved in *Gavoni,* based upon the plaintiffs' identity of interests:

> Unlike the plaintiffs in *Gavoni* (and other cases), the Roskas were not individuals with competing claims suing for separate physical injuries. This was a single family represented by one attorney, claiming mental and emotional damages arising from the same set of facts. Under these circumstances, the failure to apportion the offer does not create a "potential [for] derivative litigation" over its division or the associated costs and attorney's fees. [*Gavoni, supra*, 164 F.3d] at 1077.

*Id.* Second, the court in *Roska* found it significant that the plaintiffs had never disclosed to the defense their assessment of individual damages at any point in the litigation. Although the plaintiffs' complaint had sought a collective judgment of $5 million in compensatory damages and $15 million in punitive damages for alleged due process violations, "[n]o further factual support or computation as to individual damages was provided, even though the Federal Rules of Civil Procedure require such disclosure." *Id.* at 942 (citing Fed. R. Civ. P. 26(a)(1)(A)(iii)). Third, the court observed that the plaintiffs had not rejected the defendants' Rule 68 offer on the rationale that it precluded them from assessing its applicability to their individual claims; rather, they had considered the defendants' offer "a token offer" which, if accepted, could have resulted in the denial of their request for attorney's fees altogether and, thus, would have been "folly" to accept. *Id.* In the court's view, "this argument [made it] clear that the Roskas were not interested in accepting the offer even if it allocated amounts to individuals." *Id.* The court concluded that:

[u]nder the facts of this case, the purposes of Rule 68 were fully and fairly met by the Social Workers' offer of judgment. The Roskas were in a position to determine the value of each family member's claim and intelligently assess the risks associated with rejecting the $5,000 offer. If there was any confusion, the Roskas could have asked for clarification. The $5,000 offer as compared to the $2.00 judgment provided precise figures for the district court to compare. Accordingly, we conclude the district court did not clearly err in finding the Roskas and their attorney were able to intelligently assess the offer and did not abuse its discretion in determining the Social Workers' June 25, 2000 offer of judgment was valid under Rule 68.

*Id..*

In this case, as in *Roska,* Plaintiffs are all related, resided in the same household, and were jointly represented by the same attorney. Consequently, like the Roskas, Plaintiffs here "were not individuals with competing claims suing for separate physical injuries," but are part of "a single family represented by one attorney, claiming mental and emotional damages arising from the same set of facts." *Id.* Thus, "the failure to apportion the offer [did] not create a 'potential [for] derivative litigation' over its division or the associated costs and attorney's fees." *Id.* (*citing Gavoni,* 164 F.3d at 1077). In fact, because Plaintiffs in this case were at all times jointly represented by the same attorney, "Plaintiffs' attorney was in a better position than even the Defendants to evaluate the value of each of their claims." *Roska v. Sneddon,* No. 1:99CV112, 2007 WL 4165750, at *3 (D. Utah, Nov. 20, 2007), *aff'd,* 366 F. App'x 930, (10th Cir. 2010).

There is no indication in the record before the court that Plaintiffs ever sought individualized damages for their respective claims or disclosed their own assessments of their individual damages to the defense.[8] The complaint sought compensatory and punitive damages

---

[8] Defendants made representations concerning certain disclosures which Plaintiffs' counsel allegedly made during the parties' final settlement discussions relative to the Plaintiffs' evaluation of their claims. (*See* Defs.' Br. in Opp. to Pls.' Amended Mot. for Costs and Attorney's Fees [ECF No. 72] at 10-11.) Plaintiffs, however, dispute the

in an unspecified sum collectively on behalf of all three Plaintiffs. The billing records which Plaintiffs' counsel submitted to the court in connection with the pending motion confirm that, at all times, Plaintiffs prosecuted their claims in an aggregate fashion. (Indeed, in arguing against a reduction of a lodestar fee, Plaintiffs contend that their claims are all "intertwined" and arise out of a common set of facts.) Plaintiffs' assertion that they could not have meaningfully evaluated Defendants' lump sum offer is further belied by Plaintiffs having evaluated their claims collectively at early neutral evaluation when they made a "bottom line" aggregate demand of $25,000.00. (*See* ECF No. 12.) Finally, there is no suggestion in the record that Plaintiffs articulated a dissatisfaction with Defendants' offer of judgment because of a lack of clarity, as opposed to a lack of sufficiency. Accordingly, like the plaintiffs in *Roska,* Plaintiffs in this case "were in a position to determine the value of each family member's claim and intelligently assess the risks associated with rejecting the [Defendants'] offer." *Roska*, 366 F. App'x at 942.

The second policy concern discussed in *Gavoni* is that an unapportioned offer may cause uncertainty for the court about whether the actual judgment received by an individual plaintiff is less than the plaintiff's share of the offer. *Gavoni* recognizes that courts need two easily comparable figures for Rule 68 purposes and cannot be asked to attempt to apportion an offer in the first instance. In this case, however, where each side at all times operated as a unified front, the purposes of Rule 68 will be served by the court's comparison of Defendants' $10,000.00 lump sum offer with the total judgment finally obtained by all three Plaintiffs.[9] *C.f. Id.* (finding

accuracy of Defendants' representations and urge the court to disregard them, as the substance of counsels' settlement discussions are not of record. (*See* Pls.' Reply Br. to Defs.' Br. in Opp. to Pls.' Amended Mot. for Costs and Attorney's Fees [ECF No. 73] at 2.) The court will honor Plaintiffs' request and will not consider Defendants' assertions concerning the parties' final settlement negotiations.

[9] It is appropriate to view all three Plaintiffs collectively as the "offeree" for purposes of Rule 68(d) inasmuch as Defendants' offer of judgment was made collectively to all three. Although Rule 68 speaks of the "offeree" in the

that the defendants' unallocated $5,000.00 offer as compared to the $2.00 judgment collectively obtained by the plaintiffs provided precise figures for the district court to compare).  The court will have no difficulty making this comparison in light of its determination that no attorney's fees will be awarded.  In sum, because the concerns articulated in *Gavoni* do not exist in this case, the court does not find Defendants' offer of judgment to be invalid simply because Defendants failed to apportion individual settlement amounts among the various Plaintiffs.

This conclusion is in line with Rule 68's purpose of encouraging settlement.  *See Marek,* 473 U.S. at 6.  As the Court observed in *Marek,* "[i]f defendants are not allowed to make lump-sum offers that would, if accepted, represent their total liability, they would understandably be reluctant to make settlement offers."  473 U.S. at 6-7.  Particularly in multi-defendant cases like this one, "where a single employer is likely to pay the bill (such as one against a company and several of its officers), a full settlement will often be the only one that makes sense for the company – the likely payor – and the only one that will be forthcoming."  *King v. Rivas,* 555 F.3d 14, 17-18 (1st Cir. 2009) (discussing the validity of a lump sum offer of judgment unapportioned among multiple defendants).  Although "the practice of allocating the offer as to each plaintiff may increase clarity and ensure the offer is valid, such a requirement in every instance would place form over substance."  *Roska,* 366 F. App'x at 941.  A requirement of perfectly allocated offers would have been particularly unworkable in this case, where Plaintiffs' asserted multiple claims against the fourteen different officers who had converged on their

singular, "federal law provides, in line with common sense, that 'unless the context indicates otherwise – words importing the singular include and apply to several persons, parties or things.'"  *King v. Rivas,* 555 F.3d 14, 17 (1st Cir. 2009) (citing 1 U.S.C. §1 and applying Rule 68 to an offer of judgment made collectively by multiple defendants).  The court, as more fully discussed in this opinion, will conduct its Rule 68(d) analysis by considering whether Defendants' offer is more favorable than the judgment obtained by all three Plaintiffs in the aggregate (inclusive of court-awarded pre-offer fees and costs).

property.  Because Defendants included a settlement of attorney's fees as part of their offer, apportionment among the various Plaintiffs would have been all the more impractical given that Plaintiffs were jointly represented by a single attorney who was simultaneously prosecuting all their overlapping claims and apparently billing them as a single client.

Notably, the actual holding in *Gavoni* was that the defendant had failed to carry its burden of proving that the defendant's Rule 68 offer was more favorable than the judgment ultimately recovered by each of the individual plaintiffs.  *See Gavoni*, 164 F.3d at 1075-76. Most federal courts have interpreted *Gavoni* as reflecting a case-by-case, fact-specific analysis in which the defendant bears the burden of establishing Rule 68's application and bears the risk of losing the benefit of the rule's cost-shifting provisions if there is an ambiguous offer of judgment.  *See, e.g., King,* 555 F.3d at 19 n.5 (it is the defendant's burden to establish comparability of offer and ultimate judgment); *Reiter v. MTA New York City Transit Auth.,* 457 F.3d 224, 231 (2d Cir. 2006) ("In determining the value of the relief, the defendant bears the burden of showing that the Rule 68 offer was more favorable than the judgment.") (citing 12 Charles Alan Wright, et al., Federal Practice & Procedure § 3006.1 (2d ed.1997)); *Harbor Motor Co.,*  265 F.3d at 648 ("the burden is on the defendant-offeror to demonstrate that its 'offer was more favorable than the judgment and that the mandatory cost-shifting provision was therefore triggered.'") (quoting *Gavoni,* 164 F.3d at 1075-76).  The court now needs to consider whether Defendants satisfied their burden of demonstrating that their offer of judgment exceeded the "judgment finally obtained" by Plaintiffs.

Plaintiffs maintain that Rule 68(d)'s cost-shifting mandate is inapplicable here because, by their calculation, the amount of their recovery exceeds Defendants' Rule 68 offer. Specifically, Plaintiffs assert that their attorney spent sixty-five hours on their case prior to the time Defendants' offer was made.  Multiplying these hours by the requested fee rate of $300.00 per hour, Plaintiffs calculate that they accrued $19,500.00 in counsel fees prior to the time that Defendants made their offer of judgment.  Plaintiffs posit that they incurred $1,150.50 in costs as of the date of Defendants' offer.  Because Plaintiffs briefed this issue prior to Judge McLaughlin's Rule 50(b) ruling, they also include in the calculus the $4.00 in nominal damages awarded by the jury, which now is $1.00.  Regardless, Plaintiffs assert that the combined total of nominal damages, accrued costs, and $19,500.00 in counsel fees clearly exceeds $10,000.00, thus making Rule 68's cost-shifting provision inapplicable.  (*See* Br. in Supp. of Pls.' Response to Mot. for Costs Pursuant to Rule 68 [ECF No. 63] at 1-2.)

Implicit in Plaintiffs' argument is the assumption that it is appropriate for the court to factor into its Rule 68 analysis the $19,500.00 in attorney fees that Plaintiffs accrued prior to the date of the Defendants' offer of judgment.  This assumption is misguided.  As the Court noted in *Marek*, the term "costs" as used in Rule 68 refers to "all costs properly awardable in an action," 473 U.S. at 9, but "Section 1988 authorizes courts to award only 'reasonable' attorney's fees to prevailing parties," *id.* at 11, and "'the most critical factor' in determining a reasonable fee 'is the degree of success obtained.'"  *Id*. (quoting *Hensley,* 506 U.S. at 436).  This court already determined that no low fee award is appropriate in this case in light of Plaintiffs' technical victory.

In computing the amount of the "judgment... finally obtain[ed]" for purposes of Rule 68(d), the court cannot use the amount of pre-offer fees actually accrued by Plaintiffs because in this case no fees were awarded for those services. *See Bogan v. City of Boston,* 489 F.3d 417 (1st Cir. 2007) ("The 'judgment finally obtained' under Rule 68 includes the damages award plus pre-offer fees and costs actually awarded.") (citing authority); *Scheeler v. Crane Co.,*, 21 F.3d 791, 793 (8th Cir. 1994) (concluding that amount of pre-offer fees and costs credited as part of the "judgment finally obtained" included the reasonable fees and costs awarded by the court); *Marryshow v. Flynn,* 986 F.2d 689, 692 (4th Cir. 1993) (holding that "when evaluating, for Rule 68 purposes, the 'judgment finally obtained' to determine whether it is more favorable to a plaintiff than an earlier offer of judgment by the defendants, the judgment finally obtained must include not only the verdict of the jury but also the costs actually awarded by the court for the period that preceded the offer"); *Grosvenor v. Brienen,* 801 F.2d 944, 948 (7th Cir. 1986) (concluding that Rule 68's reference to the "judgment" obtained by the plaintiff included both the verdict "and the district court's determination of reasonable pre-offer fees under § 1988."); *Brandt v. Magnificent Quality Florals Corp.,* No. 07-20129-CIV, 2011 WL 4625379, at *15 (S.D. Fla. Sept. 30, 2011) (finding that the "judgment finally obtained" under Rule 68 includes the damage award plus pre-offer fees and costs "actually awarded") (citations omitted); *Pietrowski v. Merchants and Medical Credit Corp.,* 256 F.R.D. 544, 549 (E.D. Mich. 2008) ("*Marek* and *Marryshow* stand for the proposition that the court must add to the jury award only those pre-offer costs and fees that are *actually awarded* in order to determine if Plaintiffs recovery is 'more favorable than the unaccepted offer.'") (emphasis in the original). This point of law was persuasively explained by the First Circuit Court of Appeals in *Bogan*: "The [plaintiffs'] argument for crediting their request for pre-offer fees and costs, instead of the

amount actually awarded by the court, is illogical. If this were the rule, a prevailing party could always evade the Rule 68 bar simply by asking for a sufficiently large fee award so that the judgment finally obtained exceeds the offer. Not surprisingly, there is no caselaw to this effect." Bogan, 489 F.3d at 431 (citing *Scheeler* and *Marryshow*).[10]

Given the court's determination that no fee award is appropriate, it is clear that the cost-shifting mandate of Rule 68(d) applies in this case. Notably, Plaintiffs have requested a total of $2,371.90 in costs. By any method of calculation, Plaintiffs' total recovery of pre-offer attorney's fees and costs, together with Maria's $1.00 nominal verdict, does not exceed Defendants' $10,000.00 offer of judgment. Rule 68(d), therefore, precludes Maria Jordan from recovering her post-offer costs.

Accordingly, the court need only address Maria's request for pre-offer costs. These costs consist of the following: (1) a $100.50 prothonotary fee incurred in connection with Plaintiffs' state court petition to obtain copies of the police reports relative to the underlying incident; (2) the $350.00 filing fee for this federal civil action; and (3) a $700.00 fee representing Plaintiffs' share of the costs of early neutral evaluation. (*See* Affidavit of Paul J. Susko in Support of Pls.' Mot. for an Award of Costs and Attorney's Fees, Ex. C [ECF No. 57-3] at 2.)[11]

---

[10] In support of their Rule 68 analysis, Plaintiffs cite *Marek v. Chesney,* 473 U.S. 1 (1985), and *Corder v. Gates,* 947 F.2d 374 (9th Cir. 1991). In both those decisions, however, the parties were in agreement about the amount of attorney fees which had accrued as of the date of the defendants' Rule 68 offer. *See Marke,* 473 U.S. at 4; *Corder,* 947 F.2d at 376. Consequently, neither of these decisions can reasonably be interpreted as holding that a plaintiff's requested pre-offer fees and costs control for purposes of a Rule 68 analysis.

[11] According to the itemization supplied by Plaintiffs in support of their original motion for attorney fees and costs, Plaintiffs originally sought reimbursement as well for a deposition transcript fee in the amount of $215.25 which they claimed to have incurred on May 13, 2009. (*See* Affidavit of Paul J. Susko in Support of Pls.' Mot. for an Award of Costs and Attorney's Fees, Ex. C [ECF No. 57-3] at 2.) Defendants challenged that particular item on the ground that there is no record of that deposition, and Plaintiffs do not appear to be arguing the point. (See Pls.' Mem. of Law in Supp. of Pls.' Mot. and Amended Mot. for Costs and Attorney's Fees [ECF No. 69] at 7 (seeking

Defendants dispute the first item, and their objection is well-taken. Pursuant to 28 U.S.C. §1920, the costs eligible for taxation include: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of materials; (5) docket fees under 28 U.S.C. §1923; and (6) compensation for court appointed experts and for interpreters. 28 U.S.C. §1920. *See In re Paoli R.R. Yard PCB Lit.,* 21 F.3d 449, 457 (3d Cir. 2000) (noting that "the types of costs recoverable under Rule 54(d)(1) are circumscribed" as set forth in 28 U.S.C. §1920) (citation omitted). These circumscribed costs do not include filing fees in ancillary state court proceedings. Consequently, Maria Jordan may not recover the $100.50 fee which Plaintiffs paid to the Prothonotary of the Erie County Court of Common Pleas in relation to their unsuccessful state court petition to obtain copies of the police reports.

In addition, Plaintiffs' $700.00 fee for early neutral evaluation is not a taxable cost. On the other hand, the $350.00 filing fee which Plaintiffs paid to commence the instant litigation is a taxable cost, as it is a "fee of the clerk" within the meaning of §1920(1). The court will therefore order an award to Maria Jordan of $350.00 in pre-offer costs.

B. <u>Defendants' Renewed Request for Costs</u>

Defendants previously filed a Motion for Costs Pursuant to Rule 68 (ECF No. 52). On March 21, 2013, Judge McLaughlin denied this motion without prejudice on the ground that it could not be adjudicated until the court resolved Plaintiffs' motion for attorney's fees and costs. (*See* Order of 3/21/13 [ECF No. 70].) Although Defendants did not file a formal motion, they

---

only $1,150.50 in pre-offer costs)). Accordingly, Plaintiffs original request for costs was adjusted downward to reflect the exclusion of the May 13, 2009 transcript fee.

renewed their request for post-offer costs in their brief opposing Plaintiffs' amended motion for attorney's fees and costs. (*See* Defs.' Br. in Opp. to Pls.' Amended Mot. for Costs and Attorney's Fees [ECF No. 72] at 3). As the issues are fully briefed and adequately joined, the court will address Defendants' request as a *de facto* renewed motion.

For the reasons previously discussed at length, this court concluded that Rule 68(d)'s cost-shifting provision is applicable in this case. It is incumbent upon Plaintiffs to "pay the costs incurred after the [Defendants'] offer was made," Fed. R. Civ. P. 68(d). *See Marx v. General Revenue Corp.,* --- U.S. ---, ---, 133 S. Ct. 1166, 1171 n.2 (2013) ("Under Rule 68(d), if a defendant makes a settlement offer, and the plaintiff rejects it and later obtains a judgment that is less favorable than the one offered her, the plaintiff must pay the costs incurred by the defendant after the offer was made.") (citation omitted).

Defendants' motion for post-offer costs encompasses two elements. First, Defendants who made the offer, Officer Jamie Russo, Officer Gabriel Amory, Officer Michael Brown, Officer Melanie Szoszorek, Officer Todd McLaughlin, Officer Geoffrey Filutze, Officer Luke Yates, Officer Anthony Talarico, Officer James Bielak, Officer Steven Deluca, Officer Peter Dregalla, Officer Robert Borland, Officer Richard Romanski and Officer William Goodzich, seek to recover $1,308.75 in deposition-related expenses. Second, they seek $3,776.57 for overtime salary expenses incurred by the City of Erie in connection with the defense of this action.

With regard to the latter item, Plaintiffs object that defense counsel is apparently "wearing his hat as an Assistant Solicitor for the City of Erie, trying to indemnify the City because of an apparent collective bargaining agreement between the individual Defendants' union and the City of Erie regarding overtime pay relative to police officers appearing in Court."

(Br. in Supp. of Pls.' Resp. to Mot. for Costs Pursuant to Rule 68 [ECF No. 63] at 3.) Plaintiffs posit that it would be "rather anomalous to reward individual Defendants who had been found liable by a jury for violating Plaintiffs' federal constitutional rights" by "award[ing] them overtime pay." (Id.) Defendants respond that these "costs" are recoverable because they would not have been incurred but for the plaintiffs' commencement of the action against the original fourteen police officers. (Defs.' Br. in Resp. to Pls.' Resp. to Mot. for Rule 68 Costs [ECF No. 65] at 6.) They cite *Tai Van Le v. University of Pennsylvania,* 321 F.3d at 409, as authority for an award of overtime appearance fees.

Defendants' request for reimbursement of overtime pay for the individual Defendant police officers will be denied, as this item is not a taxable cost for purposes of Rules 54(d) and 68(d). Pursuant to 28 U.S.C. §1920, a district judge may tax as costs "[f]ees and disbursements for printing and witnesses," *see id.* at §1920(3), but this does not include overtime pay incurred when a witness testifies at trial or deposition. Allowable witness fees are set forth in 28 U.S.C. §1821 and consists of a $40.00 attendance fee "for each day's attendance." 18 U.S.C. §1821(b). *See Krouse v. American Sterilizer Co.,* 928 F. Supp. 543, 546-47 (W.D. Pa. 1996) ("Section 1920(3) provides for the recovery of only those witness fees allowed by 28 U.S.C. §1821(b).") (citation omitted). Contrary to Defendants' assertion, the decision in *Le* does not support the City's request for reimbursement of overtime pay to the various defendant police officers. *Le* addressed the viability of an offer of judgment rendered jointly by two defendants who shared a common financial identity*,* 321 F.3d at 408, but it did not address in any fashion the propriety of awarding overtime pay as part of costs. Accordingly, this aspect of Defendants' motion for costs will be denied.

Defendants' other item of costs involves expenses incurred in connection with numerous depositions. Section 1920 permits taxation of "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 28 U.S.C. §1920(2). Here, there is no claim by Plaintiffs that the depositions at issue were not necessary to the defense. Having reviewed the documentation attached to Defendants' motion for costs, the court is satisfied that the expenses were appropriately incurred and necessary for Defendants' use in this litigation. Accordingly, the taxation of $1,308.75 in deposition-related costs is appropriate and will be ordered.

### IV. Conclusion

Based on the foregoing discussion, the court will grant Plaintiffs' Amended Motion for Costs and Attorney's Fees (ECF No. 68) to the extent that Maria Jordan will be awarded $350.00 in taxable costs and $1.00 in nominal damages. In all other respects, the Plaintiffs' motion will be denied. Defendants' renewed motion for costs pursuant to Rule 68 will be granted to the extent that Defendants who extended the offer will be awarded $1,308.75 in deposition-related costs. In all other respects, Defendants' motion will be denied.

An appropriate order will be filed contemporaneously with this Memorandum Opinion.


Dated: March 5, 2014                                    BY THE COURT,


                                                       */s/  Joy Flowers Conti*
                                                       Joy Flowers Conti
                                                       Chief United States District Judge